**CAREY D. GORDEN**
California Bar No. 236251
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 234-8467 ext. 3766

Attorneys for Mr. Spence

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JOSEPH MICHAEL SPENCE,<br><br>  Defendant. | U.S.D.C. No. 08CR0284-LAB<br><br>Date:<br>  March 17, 2008<br>Time:<br>  2:00 p.m.<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

**I.**

**STATEMENT OF FACTS**[1]

According to the government, On January 1, 2008 at 11:47 a.m., Border Patrol Agent Gutierrez was conducting line watch duties in the area known as Bravo Ranch. He observed a suspected illegal alien climb over the international boundary fence and run north towards Bowker Road. As he approached Bowker Road, he observed a white PT Cruiser leave the area without making a complete stop at the intersection. Agent Gutierrez recognized the driver as Joseph Michael Spence. Agent Gutierrez also observed a male whom he recognized as a known alien smuggler walking north on Bowker Road. Agent Gutierrez searched the immediate area for the suspected illegal alien and found footprints that lead to a stop sign on Bowker

---

[1] This statement of facts is taken from the criminal complaint, indictment, and discovery provided by the government. Mr. Spence does not adopt these facts and reserves the right to challenge these facts at any future proceeding.

1 Road. The agent decided to perform a vehicle stop on the PT Cruiser. While attempting to perform the
2 vehicle stop, the vehicle allegedly failed to yield. At approximately 11:56 a.m., the Calexico Police
3 Department notified border patrol that they had the PT Cruiser in custody in a parking lot. Agent Gutierrez
4 arrived to find Mr. Spence in handcuffs sitting on the ground. Calexico Police assisted in searching the area
5 for other occupants. Shortly thereafter, officers encountered a female attempting to hide behind a shed near
6 the parking lot.

7      Mr. Spence is charged in an indictment with one count of transporting an illegal alien in
8 violation of 8 U.S.C. § 1324 (a)(1)(A)(ii) and one count of bringing in an illegal aliens for financial gain in
9 violation of 8 U.S.C. § 1324 (a)(2)(B)(ii).

10

11                                                 **II.**

12                      **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

13

14      Mr. Spence requests the following discovery. His request is not limited to those items that the
15 prosecutor knows of. It includes all discovery listed below that is in the custody, control, care, or knowledge
16 of any "closely related investigative [or other] agencies." *See United States v. Bryan*, 868 F.2d 1032 (9th Cir.
17 1989).

18      (1) Brady Material. The defendant requests all documents, statements, agents' reports, and
19 tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the
20 government's case. Under *Brady v. Maryland*, 373 U.S. 83 (1963), impeachment as well as exculpatory
21 evidence falls within the definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S.
22 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

23      (2) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar
24 acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used
25 to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid. 404(b), "upon request of the
26 accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of
27 any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant
28

requests such notice two weeks before trial in order to give the defense time adequately to investigate and prepare for trial.

(3) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search. Fed. R. Crim. P. 16(a)(1)(E). He wishes to inspect the evidence prior to trial in this case.

(4) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to any car allegedly driven by Mr. Spence.

(5) <u>Tangible Objects</u>. The defendant seeks to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

(6) <u>Expert Witnesses</u>. The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G).

(7) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his testimony.

(8) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613; *Brady v. Maryland*, 373 U.S. 83 (1963).

(9) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(10) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired,

and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(11) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness.

(12) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant.

(13) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert. Fed. R. Crim. P. 16(a)(E)(i).

(14) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material.

(15) <u>Giglio Information</u>. Under *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(16) <u>Scientific and Other Information</u>. To the extent not already provided, the defendant requests the results of any scientific or other tests or examinations, including testing done on the alleged marijuana. *See* Rule 16(a)(1)(F).

(17) <u>Informants and Cooperating Witnesses</u>. The defense requests disclosure of the name(s), address(es), and location(s) of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the charged crime. *Roviaro v. United States*, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant. *Brady v. Maryland*, 373 U.S. 83. The government must disclose any information indicating bias on the part of any informant or cooperating witness. *Id*.

1          (18) <u>Personnel Records of Government Officers Involved in the Arrest</u>.  The defendant
2 specifically requests all citizen complaints and other related internal affairs documents involving any of the
3 Customs officers or other law enforcement officers who were involved in the investigation, arrest and
4 interrogation of his, pursuant to *Pitchess v. Superior Court*, 11 Cal. 3d 531, 539 (1974).  Because of the
5 sensitive nature of these documents, defense counsel will not be able to procure them from any other source.

6          (19) <u>Government Examination of Law Enforcement Personnel Files</u>.  The defendant requests
7 that the Government examine the personnel files and any other files within its custody, care or control, or
8 which could be obtained by the government, for all testifying witnesses, including testifying officers.  He
9 requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other
10 like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory,
11 pursuant to its duty under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).  *Kyles v. Whitley*, 115 S.
12 Ct. 1555 (1995); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *but see United States v. Herring*,
13 83 F.3d 1120 (9th Cir. 1996).  The defendant specifically requests that the prosecutor, not the law enforcement
14 officers, review the files in this case.  The duty to review the files under *Henthorn* should be the prosecutor's.
15 Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

16          (20) <u>Defendant's Prior Record</u>.  Mr. Spence requests a copy of his prior criminal history.  Fed.
17 R. Crim. P. 16(a)(D).

18          (21) <u>Residual Request</u>.  The defendant intends by this discovery motion to invoke his rights
19 to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution
20 and laws of the United States.

21         **III.**

22         **MOTION TO SUPPRESS EVIDENCE UNDER THE FOURTH AMENDMENT**

23          The Fourth Amendment of the United States Constitution guarantees the right of people to be
24 secure in their persons, houses, papers and effects against unreasonable searches and seizures. U.S. Const.
25 Amend. IV.  The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const., amend
26 IV.  Temporary detention of individuals during the stop of an automobile, even if only for a brief period and
27 for a limited purpose, constitutes a "seizure" within the meaning of the Fourth Amendment, and must be
28 supported by at least reasonable suspicion.  See <u>Delaware v. Prouse</u>, 440 U.S. 648, 653 (1979); <u>United States</u>

v. Martinez-Fuerte, 428 U.S. 543, 556 (1976). Reasonable suspicion requires that the officer making the stop be "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (emphasis added).

The Fourth Amendment protection from unreasonable searches and seizures applies to persons in moving vehicles. See United States v. Cortez, 449 U.S. 411, 417 (1981). These protections also apply to persons driving near the United States' border with Mexico. Roving border patrol agents must have reasonable suspicion, based on specific and articulable facts, in order to initiate a stop. United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975); Gonzalez-Rivera v. I.N.S., 22 F.3d 1441, 1445 (1994). "Reasonable suspicion requires that the specific facts and inferences create suspicion 'that the particular person detained is engaged in criminal activity.'" United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1493 (9th Cir. 1994). Simply put, an officer must have a *particularized and objective basis of criminal activity* in order to detain a motorist. Cortez, 449 U.S. at 417-418. "Founded suspicion must exist at the time the officer initiates the stop." United States v. Salinas, 940 F.2d 392, 394 (9th Cir. 1991) (citations omitted).

Because the Border Patrol agent or agents who initiated and performed the stop in this case did not have the requisite suspicion that the Constitution demands, the stop of Mr. Spence violated his Fourth Amendment rights.

On January 20, 2008, government agents seized Mr. Spence in violation of the Fourth Amendment. Agents lacked reasonable suspicion and probable cause to seize Mr. Spence. For these reasons, Mr. Spence moves to suppress all evidence, including but not limited to any statements Mr. Spence may have made to Calexico Police Officers as well as any Border Patrol agents, any observations made by the agents, and anything discovered as a result of his unlawful seizure. In the alternative, Mr. Spence requests an evidentiary hearing on this Fourth Amendment motion.

**2.    The government bears the burden of justifying this warrantless seizure**

Agents seized Mr. Spence without a warrant. That seizure is therefore presumptively unreasonable. See United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001). It is the government's burden to demonstrate that its agents complied with the Fourth Amendment. See id.

**3.    Agents lacked reasonable suspicion to Stop and Detain Mr. Spence on January 20,**

1 **2008.**

2  Mr. Spence's position is that agents needed (at a minium) probable cause to seize him in the
3 manner they chose to do so, agents nonetheless lacked even reasonable suspicion to seize Mr. Spence.
4 Leaving the area without making a complete cannot be relied upon here because the agents that stopped Mr.
5 Spence were employed by the United States Border Patrol, not the local police or highway patrol.  As Border
6 Patrol Agents, their authority is strictly circumscribed by statute.  See 8 U.S.C. § 1357; see also 8 C.F.R. §
7 287.8(b)(2).  Section 1357 has been narrowly construed by both the Ninth Circuit and the Supreme Court to
8 ensure that it comports with the Fourth Amendment.  See United States v. Brignoni-Ponce, 499 F.2d 1109
9 (9th Cir. 1974); see also Almeida-Sanchez v. United States, 413 U.S. 266 (1973).  Section 1357, as interpreted
10 by 8 C.F.R. § 287.8(b)(2), permits Border Patrol to stop an individual only if the agent has reasonable
11 suspicion, based on specific articulable facts, that the person is an illegal alien or is committing an offense
12 against the United States.  The regulation, like the statute, does not give Border Patrol any authority to enforce
13 state traffic laws.  Therefore, the allegedly failure to make a complete stop at the intersection must be rejected
14 by this Court, as it is insufficient to create reasonable suspicion that Mr. Spence was committing a crime
15 against the United States. Because they lacked reasonable suspicion to seize Mr. Spence, agents violated the
16 Fourth Amendment when seizing him.

17

18 **IV.**

19 **MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

20  Mr. Spence believes that discovery is not yet complete and respectfully requests the
21 opportunity to file further motions and/or supplement the motions already filed after reviewing additional
22 discovery and conducting independent investigation.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**V.**

**CONCLUSION**

For the foregoing reasons, Mr. Spence respectfully requests that the Court grant the above motions.

Respectfully submitted,

/s/ Carey D. Gorden
**CAREY D. GORDEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Spence

Dated: March 3, 2008