1  KAREN P. HEWITT
   United States Attorney
2  DAVID D. LESHNER
   Assistant U.S. Attorney
3  California State Bar No. 207815
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7163
   David.Leshner@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,         )  Criminal Case No. 08-CR-0284-LAB
                                     )
11              Plaintiff,           )  DATE:  March 17, 2008
                                     )  TIME:  2:00 p.m.
12       v.                          )
                                     )
13 JOSEPH MICHAEL SPENCE,            )  **UNITED STATES' RESPONSE AND**
                                     )  **OPPOSITION TO DEFENDANT'S**
14              Defendant.           )  **MOTIONS TO SUPPRESS AND FOR**
                                     )  **DISCOVERY**
15 _____   )

16

17        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

18 Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and

19 hereby files its response and opposition to defendant Joseph Michael Spence's motions to suppress and

20 for discovery in the above-referenced case. Said motion is based upon the files and records of this case

21 together with the attached memorandum of points and authorities.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**STATEMENT OF THE CASE**

On February 5, 2008, defendant Joseph Michael Spence was arraigned on a two-count Indictment charging him with bringing in illegal aliens for financial gain, transportation of illegal aliens and aiding and abetting, in violation of 8 U.S.C. §§ 1324(a)(2)(B)(ii); 1324(a)(1)(A)(ii) and (v)(II); and 18 U.S.C. § 2. Defendant entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

**A.    Defendant's Apprehension**

On January 20, 2008, Border Patrol Agent J. Gutierrez was performing line watch duties approximately 1.7 miles east of the Calexico West Port of Entry. Agent Gutierrez was stationed near Bravo Ranch, an abandoned ranch located approximately 30 yards north of the International Boundary Fence. In this area, Bowker Road runs north and south and bisects Bravo Ranch. Anza Road runs east and west between Bravo Ranch and the International Boundary Fence.

At approximately 11:47 a.m., Agent Gutierrez observed a suspected illegal alien enter the United States by climbing over the International Boundary Fence and run north through the intersection of Bowker Road and Anza Road. As Agent Gutierrez traveled eastbound on Anza Road to respond to the location, he observed a white PT Cruiser turn right from southbound Bowker Road onto westbound Anza Road without coming to a stop. As Agent Gutierrez passed the PT Cruiser, he observed the driver and recognized him as defendant Joseph Michael Spence.

Agent Gutierrez searched the area where the suspected alien had entered the United States and determined that footprints from that area led through the intersection of Anza Road and Bowker Road and abruptly ended north of the intersection. Believing that the suspected illegal alien had crossed the intersection and entered Defendant's vehicle, Agent Gutierrez requested that Border Patrol Agent G. Avalos – who was stationed nearby in a marked service truck – perform a vehicle stop. Agent Avalos followed Defendant's vehicle and activated his emergency lights and siren in an attempt to perform a vehicle stop. Defendant failed to yield, however, and accelerated away from Agent Avalos' truck.

1  Agent Avalos thereafter discontinued the pursuit.

2       Border Patrol provided the Calexico Police Department with information concerning
3  Defendant's vehicle. At approximately 11:56 a.m., Calexico PD responded that they had detained the
4  vehicle and its driver. Agent Gutierrez responded to the scene and recognized Defendant as the vehicle
5  driver. Following a search of the immediate vicinity, agents found a female, Yaqueline Cuevas-Roman,
6  hiding nearby. Agent Gutierrez recognized Cuevas by her clothing as the individual he saw climb over
7  the International Boundary Fence near Bravo Ranch.

8  **B.**    **Defendant's Post-Arrest Statement**

9       Defendant received Miranda warnings and declined to make a statement.

10 **C.**    **Material Witness' Statement**

11      The material witness, Yaqueline Cuevas-Roman, informed agents that she is a Mexican citizen
12 without documents allowing her to legally enter or remain in the United States. Cuevas stated that she
13 had traveled from her home in Zacatecas to Mexicali, where she met an unknown smuggler who offered
14 to smuggle her into the United States for $3,000.

15      Cuevas stated that the smugglers helped her climb over the International Boundary Fence and
16 told her a white Chrysler would pick her up. Agents showed Cuevas a six-pack photo lineup, and she
17 identified Defendant as the driver of the vehicle who picked her up.

18                                     **III**

19                       **DEFENDANT'S MOTIONS**

20 **A.**    **Motion To Suppress**

21      Defendant seeks to suppress "all evidence" on the ground that Border Patrol agents lacked
22 reasonable suspicion to perform an investigatory stop of his vehicle. Motion at 6. He is wrong.

23      **1.**    **Reasonable suspicion existed for an investigatory stop.**

24      The Fourth Amendment allows officers to perform "brief investigatory stops of persons or
25 vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal
26 activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted); Terry
27 v. Ohio, 392 U.S. 1 (1968). The reasonable suspicion analysis takes into account the totality of the
28 circumstances known to the law enforcement officer. United States v. Berber-Tinoco, 510 F.3d

1083, 1087 (9th Cir. 2007). In forming reasonable suspicion, the officer is entitled to draw upon personal experience and specialized training and to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted). "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is simply "a particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less than "probable cause." Arvizu, 534 U.S. at 274.

Agent Gutierrez observed a suspected alien unlawfully enter the United States by climbing over the International Boundary Fence. Immediately thereafter, he observed Defendant's vehicle leaving the area without making a proper stop at the intersection of Anza Road and Bowker Road. Agent Gutierrez then determined that footprints likely left by the suspected alien led from the fence to an area north of the intersection before abruptly ending. The totality of these facts and circumstances provided Agent Gutierrez with a "a particularized and objective basis" for suspecting that Defendant was involved in alien smuggling. Ornelas, 517 U.S. at 696. See, e.g., United States v. Ordaz, 145 F.3d 1111 (9th Cir. 1998) (reasonable suspicion to stop four out of six cars emerging from border area where surveillance had detected possible drug activity); United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002) (finding reasonable suspicion existed to stop defendant's vehicle based on totality of circumstances even though some factors might be "innocently explainable" when "viewed in isolation").

Defendant's failure to yield when Agent Avalos activated his emergency lights and siren in an attempt to stop Defendant's vehicle provides additional grounds on which to find reasonable suspicion existed. United States v. Smith, 217 F.3d 746, 750 (9th Cir. 2005) ("Evasive actions contribute to the totality of the circumstances suggesting reasonable suspicion."). Defendant's evasive actions are a proper consideration because "a seizure does not occur if, in response to a show of authority, the subject does not yield; in that event, the seizure occurs only when the police physically subdue the subject." United States v. Santamaria-Hernandez, 968 F.2d 980, 983 (9th Cir.

1992). The reasonable suspicion analysis therefore "may take into account all of the events that occur up to the time of physical apprehension of a suspect who flees." Id. (reasonable suspicion existed to stop defendant for transporting aliens where, inter alia, defendant fled in response to Border Patrol's activation of siren and emergency lights).

**2.     Defendant is not entitled to an evidentiary hearing.**

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) (citation omitted). Local Criminal Rule 47.1(g)(1) provides, in relevant part:

> Criminal motions requiring predicate factual finding shall be supported by declaration(s) . . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.

A District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence where the defendant does not submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991). See also United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations held insufficient to require evidentiary hearing on defendant's motion to suppress statements).[1]

Here, Defendant's election not to submit a declaration is a plain violation of Local Rule 47.1(g). Further, the absence of a declaration prevents this Court from making a finding that disputed issues of fact exist in the first instance. Howell, 231 F.3d at 620. As such, the Court should deny Defendant's motion without an evidentiary hearing. Batiste, 868 F.2d at 1092 (Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

---

[1] No rights are infringed by the requirement of such a declaration because the United States may not use the declaration at trial over the defendant's objection. Batiste, 868 F.2d at 1092.

**B.     Motion For Discovery**

To date, the Government has provided Defendant with 119 pages of discovery and one DVD. The discovery produced includes the Border Patrol report of Defendant's apprehension and Defendant's rap sheet. Defendant has not provided reciprocal discovery.

**1.     Defendant's Statements**

The Government recognizes its obligation under Federal Rules of Criminal Procedure 16(a)(1)(A) and 16(a)(1)(B) to provide Defendant the substance of his oral and written statements. The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available videotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agent must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of rough notes where the contents of the notes have been accurately reflected in a typewritten report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's handwritten notes even where there "minor discrepancies" between the notes and a report).

The Government is not required to produce rough notes pursuant to the Jencks Act because the notes do not constitute "statements" as defined by 18 U.S.C. §3500(e) unless the notes: (1) comprise both a substantially verbatim narrative of a witness' assertion; and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). Any rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because they do not present any material

1  exculpatory information or any evidence favorable to Defendant that is material to guilt or
2  punishment. See Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes
3  were neither favorable to the defense nor material to defendant's guilt or punishment); United States
4  v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady
5  evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become
6  discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to
7  Defendant.

**2.     Arrest Reports, Notes and Dispatch Tapes**

9  The United States has provided Defendant with arrest reports. As noted previously, agent
10 rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16
11 discovery. If the Government discovers additional reports or tapes that require disclosure under Rule
12 16(a)(1)(A) or 16(a)(1)(B), this discovery will be provided to Defendant.

**3.     Brady Material**

14 The Government has complied with its duty under Brady v. Maryland, 373 U.S. 83 (1963) to
15 disclose material exculpatory information or evidence favorable to Defendant  when such evidence
16 is material to guilt or punishment and will continue to do so.  The Government recognizes that its
17 obligation under Brady covers not only exculpatory evidence, but also evidence that could be used
18 to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405
19 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also
20 extends to evidence that was not requested by the defense.  Bagley, 473 U.S.  at 682; United States
21 v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to
22 Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the
23 result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th
24 Cir. 1997) (emphasis added).  The final determination of materiality is based on the "suppressed
25 evidence considered collectively, not item by item."  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).
26 Brady does not, however, mandate that the Government open all of its files for discovery.
27 See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000).  Under Brady, the United States
28 is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United

1  States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from
2  other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that
3  the defendant already possesses (see Rector v. Johnson, 120 F.3d 551, 558 (5th Cir.1997)); or (4)
4  evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have
5  knowledge or control over.  See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).
6  Brady does not require the United States "to create exculpatory evidence that does not exist," United
7  States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government
8  "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540
9  F.2d 432, 438 (9th Cir. 1976).

### 4.    Any Information that May Result in a Lower Sentence

The Government has provided and will continue to provide Defendant with all Brady material that may result in mitigation of Defendant's sentence.  Nevertheless, the Government is not required to provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea and prior to Defendant's sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

### 5.    Defendant's Prior Record

The Government has already provided Defendant with a copy of his rap sheet and conviction documents in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).  To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

### 6.    Any Proposed 404(b) Evidence

Should the Government seek to introduce any similar act evidence, pursuant to Federal Rule of Evidence 404(b), it will provide Defendant with notice of its proposed use of such evidence and information about such bad acts when the Government files its Trial Memorandum.

Should the Government seek to introduce any evidence of conviction of a crime pursuant to Federal Rule of Evidence 609, it will provide Defendant with notice of its proposed use of such evidence when the Government files its Trial Memorandum.


Case 3:08-cr-00284-LAB   Document 17   Filed 03/10/2008   Page 9 of 15

The Government objects to providing Defendant with complete vehicle and pedestrian crossing reports from the Treasury Enforcement Communications System ("TECS"). TECS reports are not subject to Rule 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the Government as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If the Government intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

**7.   Evidence Seized**

The Government has and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of Defendant's defense or is intended for use by the Government as evidence in its case-in-chief, or were obtained from or belong to Defendant, including photographs. The Government, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**8.   Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.

**9.   Henthorn Material**

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality." Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the Court for in camera inspection and review. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.


9                                     08CR0284-LAB

**10.   Tangible Objects**

Again, the Government has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of Defendant's defense or is intended for use by the Government as evidence in its case-in-chief or were obtained from or belong to Defendant, including photographs.  As noted above, however, the Government need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**11.   Expert Witnesses**

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief pursuant to Fed. R. Evid. 702, 703, or 705.

**12.   Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses, including material information related to bias or motive to lie.  The Government is unaware of any evidence indicating that any prospective witness is biased or prejudiced against Defendant.  The Government is also unaware of any evidence that any prospective witness has a motive to falsify or distort testimony.  The Government will produce any evidence of bias or motive of any of its witnesses of which it becomes aware.  An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

**13.   Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**14.   Evidence of Criminal Investigation of Any Government Witness**

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.  Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  The

1 Government will, however, provide the conviction record, if any, which could be used to impeach a
2 witness the Government intends to call in its case-in-chief.  An inquiry pursuant to United States v.
3 Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

### 15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

### 16. Witness Addresses

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial.  See Weatherford v. Busey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir. 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)).[2] Nevertheless, in its Trial Memorandum, the Government will provide Defendant with a list of all witnesses it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

While the Government will supply a tentative witness list with its Trial Memorandum, it vigorously objects to providing home addresses.  See United States v. Steele, 785 F.2d 743, 750 (9th Cir. 1986); United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v.

---

[2] Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of trial.  18 U.S.C. § 3432; United States v. Richter, 488 F.2d 170 (9th Cir. 1973) (holding that defendant must make an affirmative showing as to need and reasonableness of such discovery).

1  Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual
2  Government witnesses).  A request for the home addresses and telephone numbers of Government
3  witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal
4  requirement that the Government supply defendant with a list of the nonexpert witnesses it expects
5  to call at trial.  United States v. W.R. Grace, 493 F.3d 1119, 1128 (9th Cir. 2007).
6     The Government also objects to any request that the United States provide a list of every
7  witness to the crimes charged who will not be called as a United States witness.  "There is no
8  statutory basis for granting such broad requests," and a request for the names and addresses of
9  witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(c)."  United
10 States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F.
11 Supp. 444, 502 (D. Del. 1980)).  The United States is not required to produce all possible
12 information and evidence regarding any speculative defense claimed by Defendant.  Wood v.
13 Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not
14 likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under
15 Brady).

16     **17.    Name of Witnesses Favorable to Defendant**
17     The Government will continue to comply with its obligations under Brady and its progeny.
18 At the present time, the Government is not aware of any witnesses who have made an arguably
19 favorable statement concerning Defendant or who could not identify Defendant or who were unsure
20 of Defendant's identity or participation in the crime charged.

21     **18.    Statements Relevant to the Defense**
22     The Government will comply with all of its discovery obligations.  However, "the
23 prosecution does not have a constitutional duty to disclose every bit of information that might affect
24 the jury's decision; it need only disclose information favorable to the defense that meets the
25 appropriate standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).

26     **19.    Jencks Act Material**
27     The Government will comply with its obligations pursuant to Brady v. Maryland, 373 U.S.
28 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v.

1  United States, 405 U.S. 150 (1972).  While the Government is only required to produce all Jencks
2  Act material after the witness testifies, it plans to provide most, if not all, of any Jencks Act material
3  well in advance of trial to avoid any needless delays.

**20.    Giglio Information**

The Government will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**21.    Agreements Between the Government and Witnesses**

If the Government makes or attempts to make any agreements with prospective witnesses for any type of compensation for their cooperation or testimony, it will disclose this information prior to trial.

**22.    Informants and Cooperating Witnesses**

This case does not involve confidential informants .  However, if the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in camera inspection.  See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**23.    Bias by Informants or Cooperating Witnesses**

As noted above, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses, including material information related to bias or motive to lie.

**24.    Reports of Examinations and Tests**

The United States will comply with its obligations under Rule 16(a)(1)(F) with respect to examinations or scientific tests.

**25.    Residual Request**

The Government has complied with Defendant's residual request for prompt compliance with Defendant's discovery requests and will continue to do so.

28 ///

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions.

DATED: March 10, 2008.        Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ David D. Leshner
DAVID D. LESHNER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH MICHAEL SPENCE,<br><br>    Defendant. | Case No. 08-CR-0284-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS AND FOR DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Carey Gorden, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2008.

/s/ David D. Leshner
DAVID D. LESHNER